**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------×
ELANA HIRSCH, *on behalf of herself and those similarly
situated,*

        *Plaintiff,*

    *v.*

PREMIER RETAIL GROUP, INC., *d/b/a* INFINITE
BEAUTY, *d/b/a* ORGANIC BEAUTY, *d/b/a* PREMIER
SKINCARE, *d/b/a* NATURE'S ELITE, INC., *d/b/a*
BEAUTIFUL NATURALLY, INC., *d/b/a* APEIRO INC.,
*d/b/a* INFINITE BEAUTY INTERNATIONAL, INC., *d/b/a*
TEVA ELIT PRG, *and d/b/a* FOREVER FLAWLESS;
NADAV HOURI, *individually*; IDO SHARIR, *individually*;
*and* DAVID MAOR, *individually,*

        *Defendants.*
--------------------------------------------------------------------×

**18 CV 2295**

**CLASS AND
COLLECTIVE ACTION
COMPLAINT**

      Plaintiff Elana Hirsch, on behalf of herself and those similarly situated, by her counsel,

The Harman Firm, LLP, alleges for her Class and Collective Action Complaint against

Defendants Premier Retail Group, Inc., d/b/a Infinite Beauty, Organic Beauty, Premier Skincare,

Nature's Elite, Inc., Beautiful Naturally, Inc., Apeiro Inc., Infinite Beauty International, Inc.,

Teva Elit PRG, and Forever Flawless ("Infinite Beauty"); Nadav Houri; Ido Sharir; and David

Maor (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

      1.     Ms. Hirsch was employed as a Salesperson at Infinite Beauty, a company which

sells high-markup skincare products and facelift procedures.  Ms. Hirsch sold Infinite Beauty's

products and procedures to clients, solicited potential customers, and performed various tasks

around Infinite Beauty's store, such as cleaning and sweeping.

      2.     Ms. Hirsch worked at Infinite Beauty for approximately six weeks, during which

time Infinite Beauty did not pay her any salary or hourly wage whatsoever.  Infinite Beauty then

failed to even compensate Ms. Hirsch in accordance with their agreed-upon commission schedule arrangement, ultimately paying Ms. Hirsch only a nominal fraction of the commission amount to which she was entitled, which, given her hours worked, amounted to less than minimum wage.

3.      Infinite Beauty also refused to accommodate Ms. Hirsch, who became disabled after suffering a brain aneurysm approximately four years ago.  As a result of this aneurysm, Ms. Hirsch is prone to occasional seizures, particularly when she is dehydrated or poorly rested.  Ms. Hirsch divulged her medical condition to Ido Sharir, a manager and part-owner at Infinite Beauty, prior to joining the company. When Ms. Hirsch requested reasonable accommodations for her disability—to drink from the water fountain while working in order to take essential anti-seizure medications and to work a schedule that allowed her to get adequate rest to avoid triggering seizures—Infinite Beauty chastised her, denied her water while she was anticipating a seizure-triggering event, attempted to prevent her from taking her necessary medications, and threatened to terminate her employment for requesting accommodations.  Finally, when Ms. Hirsch complained to Mr. Sharir about Infinite Beauty's disability discrimination and wage-and-hour violations, Infinite Beauty terminated her employment on the spot.

4.      Ms. Hirsch seeks damages and costs against Defendants for their failure to pay her and similarly situated employees the minimum wage, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the New York State Labor Law (NYLL), N.Y. Lab. Law §§ 1 *et seq.*

5.      Ms. Hirsch brings her FLSA claim on behalf of herself and all other similarly situated employees as a collective action pursuant to § 216(b) of the FLSA.

6.      Ms. Hirsch brings her NYLL minimum wage claim on behalf of herself and all other similarly situated employees as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

7.      Ms. Hirsch, individually, also seeks damages and costs against Defendants for failing to pay her earned commissions, in violation of NYLL § 191.

8.      Ms. Hirsch, individually, also seeks damages and costs against Infinite Beauty, Defendant Sharir, and Defendant Maor for discriminating against her based on her disability by subjecting her to a hostile work environment, failing to provide her with a reasonable accommodation, and terminating her employment, in violation of the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*

9.      Ms. Hirsch, individually, also seeks damages and costs against Infinite Beauty, Defendant Sharir, and Defendant Maor for retaliating against her for her complaints about disability discrimination, in violation of the NYCHRL, and wage-and-hour violations, in violation of NYLL § 215 and the FLSA.

## JURISDICTION AND VENUE

10.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the FLSA.

11.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYLL and NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

12.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

13.     Ms. Hirsch, at all times relevant hereto, was and is a resident of New York County in the State of New York.

14.     Upon information and belief, at all times relevant hereto, Premier Retail Group, Inc., was and is a corporation organized under the laws of the State of Florida with its headquarters located at 1909 Tyler Street, Hollywood, Florida 33020 in Broward County.

15.     Upon information and belief, Premier Retail Group, Inc., also operates under the names Infinite Beauty, Organic Beauty, Premier Skincare, Nature's Elite, Inc., Beautiful Naturally, Inc., Apeiro, Inc., Infinite Beauty International, Inc., Teva Elit PRG, and Forever Flawless.

16.     Upon information and belief, Premier Retail Group, Inc., primarily operates in the Franchises, Selling or Licensing business/industry within the Holding and Other Investment Offices sector.

17.     Upon information and belief, Premier Retail Group, Inc., has operated for approximately seven years.

18.     Upon information and belief, Premier Retail Group, Inc., generates $3.6 million in annual revenue and employs approximately 20 people.

19.     Upon information and belief, Premier Retail Group operates at the following locations:

    a.   The Westchester Mall, White Plains, NY;

    b.   Town Center at Boca Raton, Boca Raton, FL;

    c.   Westfield Montgomery Mall, Bethesda, MD;

    d.   Westfield Valley Fair Mall, Santa Clara, CA;

    e.   Westfield Galleria at Roseville Mall, Roseville, CA;

    f.   Roosevelt Field Mall, Garden City, NY;

    g.   1031 3rd Avenue, New York, NY; and

    h.   119 Duval Street, Key West, FL.

20.    Each location uses the same customer service phone number (1-888-311-9497) and email address (customerservice@infinitebeautyusa.com).

21.    Upon information and belief, at all time relevant hereto, Defendant Nadav Houri was and is the President and Chief Executive Officer of Infinite Beauty, the President of Premier Retail Group, Inc., the President of Nature's Elite, President of Apeiro Inc., and the current registered agent of Nature's Elite.

22.    According to Mr. Houri's biography on Statelandbrown.com (Stateland Brown is a real estate company located in Florida), "Within the past few years, Nadav purchased and manage over 30 properties of his own, while maintaining his position as CEO of a prestigious retail company."

23.    Upon information and belief, the "prestigious retail company" referred to above in ¶ 22 is Premier Retail Group, and the other companies listed in the Complaint are all aliases of Premier Retail Group.

24.    Upon information and belief, Mr. Houri resides in Sunny Isles Beach, Florida, in Miami-Dade County.

25.    Upon information and belief, Mr. Houri has owned, managed, and operated approximately 12 companies, which were all formed over an eight-year period, with the most recent being incorporated in January 2018.  Upon information and belief, nine of those companies are still active, while three are now inactive.

26.     Upon information and belief, the nine active companies, including the eight identified in this complaint, are all engaged in the same business; involve the same core group of individuals, including Mr. Houri; share resources, including common funding; and, for all intents and purposes, operate as a single enterprise.

27.     Upon information and belief, Ido Sharir resides at 690 9th Avenue, Apartment 2N, New York, New York 10036 in New York County.

28.     Upon information and belief, Mr. Sharir is a part owner of Infinite Beauty's Upper East Side location at 1031 3rd Avenue, where Ms. Hirsch worked.

29.     Mr. Sharir managed and operated Infinite Beauty's Upper East Side location: He was on site each day, heard complaints from customers and employees, and, along with Mr. Houri and Mr. Maor, determined the policies and practices concerning the payment of wages and commissions to employees at the Upper East Side location.

30.     Upon information and belief, David Maor resides at 666 West Avenue, Apartment 18K, New York, New York 10025 in New York County.

31.     Mr. Maor managed and operated Infinite Beauty's Upper East Side location: he was on site each day, heard complaints from customers and employees, and, along with Mr. Houri and Mr. Sharir, determined the policies and practices concerning the payment of wages and commissions to employees at the Upper East Side location.

**COVERAGE UNDER THE FLSA**

32.     At all times relevant hereto, Ms. Hirsch was Infinite Beauty's "employee" within the meaning of the FLSA.

33.     At all times relevant hereto, Infinite Beauty was Ms. Hirsch's "employer" within the meaning of the FLSA.

34.     Infinite Beauty was, and continues to be, an "employer" within the meaning of the FLSA.

35.     At all times relevant hereto, Infinite Beauty was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA, as it generates revenue by selling skincare products and facelift procedures.

36.     Upon information and belief, Infinite Beauty's annual gross revenue was in excess of $500,000 during the relevant time period.

37.     At all times relevant hereto, Ms. Hirsch was "engaged in commerce" and subject to individual coverage of the FLSA.

38.     At all times relevant hereto, the federal minimum wage was $7.25 per hour, and the New York State minimum wage for employers in New York City with 11 or more employees was $11.00 per hour.  Under the FLSA, where a state minimum wage is higher than the federal minimum wage, the higher state minimum wage rate applies.  *See* 29 U.S.C. § 218(a).

## COLLECTIVE ACTION ALLEGATIONS

39.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Ms. Hirsch seeks to prosecute her FLSA claim as a collective action on behalf of herself and others who currently work or formerly worked as Salespersons for Infinite Beauty (the "Collective Action Members") whom Defendants did not pay the minimum wage during the three-year period immediately preceding the filing of the original Complaint (the "FLSA Statutory Period").

40.     Ms. Hirsch regularly performed work for Defendants for which Defendants should have paid her at least the minimum wage.

41.     Defendants, however, did not pay Ms. Hirsch any salary or hourly wage whatsoever for her hours worked throughout her employment.

42. What Defendants did pay Ms. Hirsch in commissions did not amount to the minimum wage for all hours Ms. Hirsch worked.

43. As a result, Defendants failed to compensate Ms. Hirsch at the minimum wage rate for all hours worked, in violation of the FLSA.

44. Defendants subjected Ms. Hirsch and the Collective Action Members to the same pay provision(s) in that Defendants failed to properly compensate either Ms. Hirsch or the Collective Action Members for their hours worked.

45. The Collective Action Members are thus owed unpaid wages under the FLSA for the same reasons as Ms. Hirsch.

## CLASS ACTION ALLEGATIONS

46. Pursuant to Rule 23, Ms. Hirsch seeks to prosecute her NYLL minimum wage claim as a class action on behalf of herself and others who currently work or formerly worked as Salespersons for Infinite Beauty in the State of New York (the "Class Members") at any time during the six-year period immediately preceding the filing of the original Complaint (the "NYLL Statutory Period").

47. While the exact number of Class Members is presently unknown, it is estimated that there are at least 50 Class Members.

48. The group of potential Class Members is so numerous as to make it impracticable to bring them all before the Court, for which reason Ms. Hirsch initiates this litigation for all persons similarly situated pursuant to Rule 23.

49. Despite the numerical size of the Class, the identities of the Class Members can be ascertained through Infinite Beauty's human resources and payroll records.

50.     Ms. Hirsch and her counsel do not anticipate any difficulties in the management of this action as a class action.

51.     Ms. Hirsch is committed to vigorous prosecution of this action, will adequately represent the Class Members in this action, and has retained competent counsel experienced in class action litigation.

52.     Ms. Hirsch is a Class Member and has no interest antagonistic to or in conflict with other Class Members.

53.     This action raises numerous questions of law and fact which are of common and general interest to the Class Members, including:

    a.   whether Defendants employed the Class Members within the meaning of the NYLL;

    b.   what proof of hours worked is sufficient where the employer fails in its duty to maintain adequate time records;

    c.   whether Defendants failed to pay the Class Members the New York State minimum wage, in violation of the NYLL;

    d.   the method by which Defendants determined their classification of and compensation to the Class Members;

    e.   whether Defendants' violations of the NYLL were willful as that term is used within the context of the NYLL; and

    f.   whether Defendants are liable for all damages claimed hereunder, including, but not limited to, compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

54.     The claims or defenses of the represented party are typical of the claims or defenses of the Class Members.

55.     Ms. Hirsch has the same interests as other Class Members in prosecuting her claims against Defendants.

56.     Ms. Hirsch and all Class Members sustained damages as a result of Defendants' wrongful conduct.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

58.     Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for the Class Members to redress the wrongs done to them individually.

59.     Ms. Hirsch and The Harman Firm, LLP, will fairly and adequately assert and protect the interests of the Class Members.

## STATEMENT OF FACTS

60.     On or about June 1, 2017, Ms. Hirsch began working as a Salesperson at Infinite Beauty's Upper East Side store, located at 1031 Third Avenue, New York, New York 10065 (the "Store").

61.     Infinite Beauty is an upscale beauty boutique that offers salon services and beauty products to its wealthy clientele.

62.     Infinite Beauty claims that its products are made with rare and valuable ingredients like diamonds (the Diamond Infused Stretching Mask costs $2,500), pure gold (the 24K Gold Facial Mask sells for $4,950), and Dead Sea salts (Supreme Lifting Neck Serum is on the bargain end at $509.99).

63.     As a Salesperson, Ms. Hirsch's job primarily entailed selling Infinite Beauty's skincare products and facelift procedures to customers and soliciting potential customers by standing outside the Store and offering samples of Infinite Beauty's products.

64.     Ms. Hirsch also regularly performed various cleaning and maintenance tasks in and around the Store, such as sweeping, watering plants, and the like.

65.     Ms. Hirsch reported directly to David Maor, the Store's Manager, and to Ido Sharir, one of the Store's owners, throughout her employment.

**I.      Wage-and-Hour Claims**

66.     Ms. Hirsch was a non-exempt employee at Infinite Beauty throughout her employment.

67.     Ms. Hirsch's position at Infinite Beauty was inside sales.

68.     Infinite Beauty determined Ms. Hirsch's schedule and controlled her work.

69.     Mr. Sharir set Ms. Hirsch's work schedule, informed her of her weekly work schedule, regularly required her to remain at the Store after the end of her shift to clean the Store or attend mandatory employee meetings, and told her that Infinite Beauty would discipline her if she did not attend mandatory meetings or arrive on time for scheduled shifts.

70.     Infinite Beauty set restrictions on Ms. Hirsch's dress and behavior.

71.     For example, Infinite Beauty required Ms. Hirsch to adhere to a workplace dress code, which consisted of all black outfits and prohibited jeans, and instructed her to sit in a certain way while on Infinite Beauty's premises.

72.     Infinite Beauty told Ms. Hirsch that she would be disciplined if she failed to comply with these rules.

73.     Ms. Hirsch worked only at Infinite Beauty's Store location.

74.     As such, Ms. Hirsch was not an independent contractor.

75.     Ms. Hirsch worked two to four sales shifts at the Store each week and regularly attended mandatory employee meetings outside of regular Store hours, for a total work week of approximately 30 hours.

76.     Throughout Ms. Hirsch's employment, however, Infinite Beauty never paid her any salary or hourly wage for these hours worked.

77.     Moreover, Infinite Beauty failed to pay Ms. Hirsch the full amount of her commissions in accordance with the commission structure to which Ms. Hirsch had agreed upon her hire.

78.     As such, Infinite Beauty failed to pay Ms. Hirsch the minimum wage.

79.     Upon Ms. Hirsch's hire, Mr. Sharir assigned an Infinite Beauty senior supervising employee, known to Ms. Hirsch only as "Katrin," to train Ms. Hirsch on the Store's policies and procedures, including compensation.

80.     Mr. Sharir and Katrin explained Infinite Beauty's commission structure to Ms. Hirsch as follows: 50 percent commission on the first $10,000 in sales, 60 percent commission on the next $5,000, and 70 percent commission on all sales thereafter, plus bonuses upon achieving certain sales numbers (e.g., a $250 bonus upon reaching $10,000).

81.     Another Infinite Beauty employee, known to Ms. Hirsch only as "Oren," informed Ms. Hirsch that Infinite Beauty would pay her via check, issued once per month on the 15th, which would represent all of her accrued commissions for the previous month.

82.     Oren also told Ms. Hirsch that all initiated clients would be exclusively Ms. Hirsch's clients for 24 months after termination on subsequent purchases as a recurring payment for originations for the purposes of calculating commissions.

83.     During Ms. Hirsch's one-month tenure at the Store, she made approximately $23,511.50 in sales.

84.     Accordingly, per the commission structure Infinite Beauty had described to Ms. Hirsch upon her hire, Ms. Hirsch should have earned approximately $13,958.05 in commissions on those sales, plus a $250 bonus for reaching $10,000 in sales and a $700 bonus for reaching $20,000 in sales, for a total of $14,908.05 in commissions and bonuses.

85.     However, to date, Infinite Beauty has paid Ms. Hirsch only $1,534.59, in a single check issued to her on or about July 15, 2017, the day after her employment at Infinite Beauty ended.

86.     As a result, Infinite Beauty owes Ms. Hirsch approximately $13,373.46 in unpaid commissions and bonuses.

87.     On or about July 18, 2017, Infinity Beauty recognized this debt, stating that Infinite Beauty was "prepared to immediately transfer any balance due […] upon [Ms. Hirsch's] signing a general release […]."

**II.     Disability Discrimination Claims**

88.     Approximately four years ago, in and around 2013, Ms. Hirsch became disabled after suffering a brain aneurysm.

89.     Ms. Hirsch underwent five embolization procedures and craniotomy surgery to treat her aneurysm, as well as bilateral core decompression surgery to treat osteonecrosis in her hips caused by the high doses of steroids she had been given in the intensive care unit after her aneurysm.

90.     Due to her aneurysm and these related procedures and complications, Ms. Hirsch now suffers from occasional and unexpected seizures and has limited ability to lift heavy objects or stand for long periods of time.

91.     In order to manage her disabilities, Ms. Hirsch attends regular doctors' appointments, takes the antiepileptic medication Keppra twice daily, and avoids situations which might trigger seizures.

92.     For example, Ms. Hirsch's seizure triggers include exhaustion and dehydration, so Ms. Hirsch requires a certain amount of sleep each day to control her seizures and drinks water consistently throughout the day.

93.     Ms. Hirsch informed Mr. Sharir of her disabilities both before and during Infinite Beauty's hiring process.

94.     Further, Ms. Hirsch made Infinite Beauty aware of her disabilities when she requested time off work to attend doctors' appointments and when she explained to Mr. Sharir her need for adequate rest.

95.     Mr. Sharir not only denied Ms. Hirsch's requested accommodation—occasional time off work to attend doctors' appointments—without explanation, but disparaged Ms. Hirsch's work ethic and commitment to her job because she had requested accommodations, telling Ms. Hirsch, "You need 100 percent to succeed in this."

96.     On or about July 13, 2017, Ms. Hirsch was working a sales shift, standing outside the Store soliciting potential customers for Infinite Beauty.

97.     Ms. Hirsch had been standing outside in 90-degree heat for an extended period of time when she began to experience pre-ictal symptoms (i.e., early signs of an impending seizure).

98.     Afraid for her health, Ms. Hirsch went inside the Store immediately to go to the water fountain downstairs—which, Infinite Beauty had informed her, was the only place where employees were allowed to get water—so that she could take her antiepileptic medication.

99.     After taking her medication, Ms. Hirsch promptly went back outside to continue working.

100.    After Ms. Hirsch returned to work, however, Mr. Maor followed her outside and started to threaten her and yelled that she was not "allowed to take water from the fountain downstairs."

101.    When Ms. Hirsch responded that she had needed to get water from the fountain downstairs to take an essential medication, Mr. Maor grew extremely hostile and began to shout at Ms. Hirsch in front of the Store's customers, ordering Ms. Hirsch to "shut up," telling her that she could not "change the rule," and threatening to "get [her] fired."

102.    Ms. Hirsch was humiliated and scared by Mr. Maor's aggressive posture and demeanor, particularly in light of the fact that Mr. Maor is over 6 feet tall and weighs over 200 pounds, while Ms. Hirsch is 5 feet 3 inches tall and weighs around 90 pounds.

103.    Ms. Hirsch, afraid that she would both lose her job and be subject to physical harm if she continued to press the issue, continued working and finished her shift.

104.    After the end of her shift, Ms. Hirsch complained to Mr. Sharir about Mr. Maor's reprimanding and aggressive behavior towards her, as well has his failure to accommodate her disabilities to prevent a seizure.

105.    Mr. Sharir then scheduled a meeting between himself, Mr. Maor, and Ms. Hirsch for the following day, July 14, 2017.

### III.      Retaliation Claims

106.      At the meeting with Mr. Sharir and Mr. Maor the following day, July 14, 2017, Mr. Sharir told Ms. Hirsch that he supported Mr. Maor's decision.

107.      Mr. Sharir directed Ms. Hirsch to follow Mr. Maor's orders "no matter what," regardless of how it would affect her health, reiterating that Infinite Beauty would not "change the rules" for her.

108.      Mr. Sharir refused to further discuss Ms. Hirsch's requested accommodations or her complaint about disability discrimination, and Mr. Maor left the room.

109.      After Mr. Maor left, Ms. Hirsch raised the issue of her commissions, as she had learned the previous day that her compensation would be significantly less than what she had expected and agreed to upon her hire.

110.      Mr. Sharir said that the amount of Ms. Hirsch's commissions was less than what Ms. Hirsch had expected because Infinite Beauty had decided—without any discussion with Ms. Hirsch—that Ms. Hirsch was obligated to share 50 percent of her commissions with Mr. Maor (or the Store's manager at the time).

111.      Ms. Hirsch, taken aback, responded that Infinite Beauty had never informed her of any such policy, nor had she ever agreed to split her commissions.

112.      Ms. Hirsch reminded Mr. Sharir that he himself had told her that any client she brought into the Store would count as her customer for the purpose of determining commissions.

113.      Mr. Sharir replied only, "I'm sorry you feel misled.  You're not going to get 50 or 60 percent.  Your commissions are only going to be 15 percent—half of 30 percent.  And I want you to pass your clients to [Mr. Maor]."

114.     Ms. Hirsch then asked to work under a different manager, as she was frightened to work with Mr. Maor after he had angrily and publicly reprimanded her for taking essential medication and denied her reasonable accommodations.

115.     In response, Mr. Sharir abruptly terminated Ms. Hirsch's employment on the spot without explanation, telling her only, "I'm sorry.  You can't work here anymore."

116.     Ms. Hirsch, shocked, asked Mr. Sharir if he was firing her.

117.     Mr. Sharir confirmed that he was and stated that he was doing so because Mr. Maor "has been working here longer."

118.     Rather than addressing Ms. Hirsch's complaints of disability discrimination and wage-and-hour violations, Infinite Beauty terminated her employment, in violation of the NYCHRL, FLSA, and NYLL.

119.     Ms. Hirsch demanded that Defendants at least pay her undisputed commissions, which Defendants refused to do without Ms. Hirsch's signing a general release.

120.     Mr. Sharir bragged about himself and his partners being "litigation-proof" and stated that they are "not afraid of lawsuits."

121.     Moreover, after terminating Ms. Hirsch, Mr. Sharir said that he was "already wanted by ICE," "had been in federal prison before," and that he "was not afraid."

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Failure to Pay the Minimum Wage in Violation of the FLSA
### (Against All Defendants)

122.     Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 121 with the same force as though separately alleged herein.

123.     At all times relevant to this action, Ms. Hirsch and the Collective Action Members were employed by Defendants within the meaning of the FLSA.

124.     The FLSA mandates that employers pay each of their employees for each hour worked at an hourly rate not less than the federal minimum wage.

125.     Defendants' wages to Ms. Hirsch and the Collective Action Members resulted in an hourly rate below the federally mandated minimum wage, even after paid commission.

126.     Defendants were or should have been aware of their obligation to pay Ms. Hirsch and the Collective Action Members the minimum wage.

127.     Defendants knowingly and willfully violated Ms. Hirsch and the Collective Action Members' rights under the FLSA by failing to pay them the minimum wage for their hours worked.

128.     Due to Defendants' FLSA violations, Ms. Hirsch and the Collective Action Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and interest related to the action.

### SECOND CAUSE OF ACTION
### Failure to Pay the Minimum Wage in Violation of the NYLL
### (Against All Defendants)

129.     Plaintiff, on behalf of herself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 128 with the same force as though separately alleged herein.

130.     At all times relevant to this action, Ms. Hirsch and the Class Members were employed by Defendants within the meaning of the NYLL.

131.     The NYLL mandates that employers pay each of their employees for each hour worked at an hourly rate not less than the New York State minimum wage.

132.    Defendants' wages and commissions to Ms. Hirsch and the Class Members resulted in an hourly rate below the applicable mandated New York State minimum wage.

133.    Defendants willfully and intentionally violated Ms. Hirsch and the Class Members' rights under the NYLL by failing to pay them the minimum wage for their hours worked.

134.    Due to Defendants' NYLL violations, Ms. Hirsch and the Class Members are entitled to recover from Infinite Beauty their unpaid compensation, liquidated damages, punitive damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### THIRD CAUSE OF ACTION
### Failure to Pay Earned Commissions in Violation of the NYLL
### (Against All Defendants)

135.    Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 134 with the same force as though separately alleged herein.

136.    At all relevant times, Ms. Hirsch was an "employee" and Defendants were an "employer" as contemplated under the NYLL.

137.    NYLL § 190 defines "wages" as earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission, or other basis.

138.    NYLL § 191(1)(c) requires employers to make timely payment of "commissions and all other monies earned or payable in accordance with the agreed terms of employment."

139.    Ms. Hirsch and Defendants agreed that Defendants would pay Ms. Hirsch commissions as part of her wages.

140.    Defendants willfully and unlawfully withheld Ms. Hirsch's earned commissions.

141.    As such, Defendants have violated the NYLL.

142.     As a result of Defendants' failure to pay her commissions, Ms. Hirsch has been deprived of her earned compensation, in an amount to be determined at trial, and is entitled to recovery of liquidated damages, interest, attorneys' fees, costs, and disbursements of the action.

### FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL
### (Against Defendants Infinite Beauty, Sharir, and Maor)

143.     Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 142 with the same force as though separately alleged herein.

144.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of disability.

145.     Defendants Infinite Beauty, Sharir, and Maor violated the NYCHRL when they subjected Ms. Hirsch to a hostile work environment based on her disability.

146.     As a direct and proximate consequence of Defendants Infinite Beauty, Sharir, and Maor's disability discrimination, Ms. Hirsch has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

147.     Defendants Infinite Beauty, Sharir, and Maor's discriminatory treatment of Ms. Hirsch involved a conscious disregard of Ms. Hirsch's rights or conduct so reckless as to amount to such disregard.  Accordingly, Ms. Hirsch is entitled to an award of punitive damages against Defendants Infinite Beauty, Sharir, and Maor.

### FIFTH CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the NYCHRL
### (Against Defendants Infinite Beauty, Sharir, and Maor)

148.     Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 147 with the same force as though separately alleged herein.

149.     The NYCHRL requires an employer to make a reasonable accommodation to enable an employee with a disability to satisfy the essential requisites of a job, provided that the disability is known or should have been known to the employer.

150.     At all relevant times, Ms. Hirsch was an individual with a disability within the meaning of the NYCHRL.

151.     Defendants Infinite Beauty, Sharir, and Maor were fully aware of Ms. Hirsch's disability, as Ms. Hirsch notified Defendants Infinite Beauty, Sharir, and Maor of her disability and requested related reasonable accommodations.

152.     Defendants Infinite Beauty, Sharir, and Maor refused to grant Ms. Hirsch's requests for a reasonable accommodation for her disability and failed to engage in the mandatory interactive process to provide reasonable accommodations for Ms. Hirsch's disability.

153.     As such, Defendants Infinite Beauty, Sharir, and Maor have violated the NYCHRL.

154.     As a direct and proximate consequence of Defendants Infinite Beauty, Sharir, and Maor's failure to accommodate her disability, Ms. Hirsch has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

155.     Defendants Infinite Beauty, Sharir, and Maor's discriminatory treatment of Ms. Hirsch involved a conscious disregard of Ms. Hirsch's rights or conduct so reckless as to amount to such disregard.  Accordingly, Ms. Hirsch is entitled to an award of punitive damages against Defendants Infinite Beauty, Sharir, and Maor.

**SIXTH CAUSE OF ACTION**
**Unlawful Termination in Violation of the NYCHRL**
**(Against Defendants Infinite Beauty, Sharir, and Maor)**

156.    Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 155 with the same force as though separately alleged herein.

157.    The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of disability.

158.    Defendants Infinite Beauty, Sharir, and Maor violated the NYCHRL when they terminated Ms. Hirsch's employment based on her disability.

159.    As a direct and proximate consequence of Defendants Infinite Beauty, Sharir, and Maor's disability discrimination, Ms. Hirsch has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

160.    Defendants Infinite Beauty, Sharir, and Maor's discriminatory treatment of Ms. Hirsch involved a conscious disregard of Ms. Hirsch's rights or conduct so reckless as to amount to such disregard.  Accordingly, Ms. Hirsch is entitled to an award of punitive damages against Defendants Infinite Beauty, Sharir, and Maor.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of the NYCHRL**
**(Against Defendants Infinite Beauty, Sharir, and Maor)**

161.    Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 160 with the same force as though separately alleged herein.

162.    The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

163.     Ms. Hirsch engaged in protected activity under the NYCHRL when she properly complained to Defendants Infinite Beauty, Sharir, and Maor about disability discrimination unlawful under the NYCHRL.

164.     Defendants Infinite Beauty, Sharir, and Maor retaliated against Ms. Hirsch by terminating her employment.

165.     As such, Defendants Infinite Beauty, Sharir, and Maor have violated the NYCHRL.

166.     As a direct and proximate consequence of Defendants Infinite Beauty, Sharir, and Maor's retaliation, Ms. Hirsch has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of NYLL § 215**
**(Against Defendants Infinite Beauty, Sharir, and Maor)**

167.     Plaintiff, individually, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 166 with the same force as though separately alleged herein.

168.     NYLL § 215 prohibits an employer from retaliating against an employee for complaining about wage-and-hour practices illegal under the NYLL.

169.     Ms. Hirsch properly complained to Defendants Infinite Beauty, Sharir, and Maor about Defendants' unlawful failure to pay her wages and earned commissions.

170.     Defendants Infinite Beauty, Sharir, and Maor retaliated against Ms. Hirsch for her complaints about Defendants' wage-and-hour violations by terminating her employment.

171.     As a direct and proximate consequence of Defendants Infinite Beauty, Sharir, and Maor's retaliation, Ms. Hirsch has suffered, and continues to suffer, substantial economic damages.

172.     Due to Defendants Infinite Beauty, Sharir, and Maor's retaliation, Ms. Hirsch is entitled to recover back pay, front pay, liquidated damages, interest, and reasonable attorneys' fees and costs related to the action.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, damages to be determined at trial;

B.  For the second cause of action, damages to be determined at trial;

C.  For the third cause of action, damages to be determined at trial;

D.  For the fourth cause of action, damages to be determined at trial;

E.  For the fifth cause of action, damages to be determined at trial;

F.  For the sixth cause of action, damages to be determined at trial;

G.  For the seventh cause of action, damages to be determined at trial;

H.  For the eighth cause of action, damages to be determined at trial; and

I.  For such other and further relief as the Court deems just and proper.


Dated: New York, New York
       March 15, 2018


                              By:    s/ Walker G. Harman, Jr.
                                     Walker G. Harman, Jr. [WH-8044]
                                     Edgar M. Rivera [ER-1378]
                                     THE HARMAN FIRM, LLP
                                     234 Fifth Avenue, Fourth Floor, #409
                                     New York, NY 10001
                                     (212) 425-2600
                                     wharman@theharmanfirm.com
                                     erivera@theharmanfirm.com

                                     *Attorneys for Plaintiff*